Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
Kelsey M. Schultz (SBN 328159)
kschultz@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA MONICA MEIER, an individual<br><br>Plaintiff,<br><br>v.<br><br>NORMAN SOLOMON, an individual; INTERNATIONAL IMAGES, LLC, d/b/a "Global Images USA", a Delaware limited liability company; BIG AUSTRALIA PTY, LTD., an Australian private company doing business as "Lyons Gallery"; and DOES 1 through 10,<br><br>Defendants. | Case No.:<br><br>PLAINTIFF'S COMPLAINT FOR:<br><br>1. VIOLATIONS OF 18 U.S.C. § 1961(C)<br><br>2. WIRE AND MAIL FRAUD, VIOLATIONS OF 18 U.S.C. §§ 1341, 1343<br><br>3. INTENTIONAL MISREPRESENTATION<br><br>4. NEGLIGENT MISREPRESENTATION<br><br>5. FRAUDULENT CONCEALMENT<br><br><u>Jury Trial Demanded</u> |

- 1 -

COMPLAINT

Plaintiff Dina Monica Meier by and through her undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

## JURISDICTION AND VENUE

1.      This action arises under the federal racketeering statute, 18 U.S.C. § 1961(C).

2.      This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1332.

3.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b)(2), (c)(3) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Specifically, the Limited Edition Photography (as defined below) was reproduced in, and distributed from Los Angeles, California by two Defendants who are residents of this judicial district.

## PARTIES

4.      Plaintiff Dina Monica Meier ("MEIER") is an individual residing in New South Wales, Australia.

5.      Defendant Norman Solomon ("SOLOMON") is an individual, and Plaintiff is informed and believes and thereon alleges that SOLOMON is a resident of Los Angeles, California.

6.      Plaintiff is informed and believes and thereon alleges that Defendant International Images, LLC d/b/a "Global Images USA" ("GLOBAL IMAGES") is a Delaware limited liability company, with a principal place of business located at 6250 Hollywood Blvd., Los Angeles, CA 90028.

7.      Plaintiff is informed and believes and thereon alleges that Defendant Big Australia Pty, Ltd., doing business as "Lyons Gallery" ("LYONS GALLERY") is an Australian private company, with a place of business located at 161 Elizabeth Street, Sydney, NSW, 2000 Australia, and is doing business in and with California, including contracting and conspiring with California resident, SOLOMON to distribute the Limited Edition Photography (as defined below).

8.     Defendants Does 1 through 10, inclusive, are other parties not yet identified who have infringed the exclusive rights at issue in this action, have contributed to the infringement such rights, or have engaged in one or more of the wrongful practices such as contributing to or participating in the unlawful conspiracy to pass of and sell infringing counterfeit works as alleged herein. Their true names, whether corporate, individual or otherwise, are presently unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

9.     Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

**BACKGROUND REGARDING HELMUT NEWTON AND SOLOMON**

10.     In 1984, Helmut Newton agreed to produce up to 3,375 limited edition and archival prints (the "Limited Edition Photography") for SOLOMON who had the exclusive right to sell and distribute these prints for a period of two years. The contract was not renewed, and a dispute later arose between The Helmut Newton Foundation, SOLOMON, and Helmut Newton's Paris agent, John Dunnicliff concerning ownership of certain Helmut Newton prints.

11.      In or about April-May 2012, SOLOMON and Dunnicliff entered into a settlement agreement with The Helmut Newton Foundation, wherein SOLOMON was allowed to keep a small number of framed 1980's-era promotional posters for

- 3 -

Helmut Newton's "Private Property Portfolio" and Dunnicliff was allowed to maintain approximately 11 Polaroid prints and 140 mounted transparencies. SOLOMON and Dunnicliff were further allowed to possess any "lawfully made copies of Helmut Newton photographs lawfully acquired by said parties" that were already in their possession and control at the time of the effective date of the settlement agreement. Defendants had to provide a Certificate of Destruction "indicating that every copy of any poster or Helmut Newton photograph reproduced by Defendants or any of them, has been destroyed by an independent third party shredding service." Moreover, Defendants agreed "to immediately notify" the HNF' counsel "if they were able to locate any other reproductions of any Helmut Newton photographs created by, or with the participation of, any Defendant, including … promotional materials wherever located, and shall arrange for the destruction of such materials at the Foundation's expense."

12.      SOLOMON and Dunnicliff were explicitly prohibited from reproducing any of the posters, photographs, or transparencies.

13.      Pursuant to the settlement agreement, SOLOMON further agreed to, *inter alia*, destroy all posters featuring Limited Edition Photography in his possession or control, or that would later be found, that he was not explicitly allowed to own per the terms of the settlement agreement; and that he did not have any adjustment right, reproduction right or copyrights whatsoever in the Limited Edition Photography or the artworks featured in the transparencies, photographs, or posters subject of the settlement agreement.

14.      Pursuant to the settlement agreement SOLOMON acknowledged and agreed that he waived all rights to challenge the validity of copyrights in and to the Limited Edition Photography or any other Helmut Newton photographs and would not dispute the validity of copyrights or The Helmut Newton Foundation's ownership of copyrights in such photography.

15.      Per Dunnicliff's declaration: "[O]n January 11 2013, Norman Solomon

purchased the 112 (one hundred and twelve) 35mm black & white slides [transparencies] of Helmut Newton's photographs which were taken by Mr. Newton himself from which Mr. Newton produced a series of silver gelatin prints that [Dunnicliff] used to introduce his works while [Dunnicliff] was his Paris based agent. Included in the purchase are 7 of the 11 (eleven) Polaroid photographs."

**SOLOMON'S CREATION OF COUNTERFEIT PRINTS**

16. ONGallery was a UK-based online art gallery, specializing in vintage photography and limited-edition fine art prints.

17. Plaintiff is informed and alleges that in or about May of 2015, Peter Neilson of ONGallery traveled to the United States to meet with SOLOMON and discussed a business deal to display and sell Helmut Newton prints from SOLOMON through ONGallery.

18. Plaintiff is informed and alleges that on or about, November 11, 2015, the parties entered an agreement for ONGallery's purchase of "original silver gelatin vintage Helmut Newton prints" from SOLOMON identified as follows:

- 1 x 16x20" Saddle II
- 2 x 16x20" The Elevator Pitch
- 2 x 16x20" Mannequin being tossed off roof
- 2 x 16x20" Blond on Blond
- 2 x 16x20" Jerry Hall spitting water at model's breasts
- 2 x 16x20" Model in fur with bear
- 2 x 16x20" Girls surrounded by gendarmes in the Bois de Boulogne
- 1 x 16x20" Babes in rowboat with man
- 2 x 16x20" Charlotte Rampling
- 2 x 16x20" fashionable woman being greeted at the door by maid
- 1 x 16x20" Rue Aubriot
- 1 x 16x20" Beach Exercise
- 1 x 16x20" Man kissing detached hand of mannequin

- 1 x 16x20" Model in bra and stockings on bed

- 1 x 16x20" Nude in cast next to Cadillac

- 1x 16x20" Winnie at the Negresco

- 1 x 16x20" Elsa Peretti in bunny costume

- 1 x 16x20" Model being dressed with arms up in V shape

- 1 x 16x20" Woman being filmed with Bulgari necklace

19.     ONGallery and SOLOMON further agreed to host a "pop-up" exhibit from November 26 - November 28, 2015 of 26 original vintage gelatin prints produced in limited numbers by Helmut Newton from transparencies. The prints would further be for sale at the pop-up as well as online.

20.     Plaintiff is informed and alleges that in response to this advertisement, on November 23, 2015, The Helmut Newton Foundation's German counsel sent ONGallery a demand to cease and desist and informing it that Helmut Newton never produced such prints from transparencies, he never gifted vintage prints to SOLOMON, and the settlement agreement with The Helmut Newton Foundation "explicitly details certain items [SOLOMON] may maintain as personal property"… "lists no such prints and"… "explicitly says that any rights"… "do not include any reproduction or copyrights."

21.     Plaintiff is informed and alleges that SOLOMON then explained to Peter Neilson "Although the settlement stated that we could retain certain Newton works, including his Polaroids, a series of transparencies, and 'whatever else' of Newton that we possessed at the time amazingly, to me and my attorney, they did not require or include a 'schedule' of what we were permitted to keep.  Also, Newton's agent, John Dunnicliff, did not want to reveal what he had accumulated, been gifted, over the ten year span that he worked for Helmut in Paris. Therefore I took a personal inventory but, in reality, they have no record."

22.     ONGallery informed The Helmut Newton Foundation it believed SOLOMON had the right to sell these 26 prints.

- 6 -

23.     Unaware of actual copying, The Helmut Newton Foundation's representative reiterated that Helmut Newton did not produce such exhibition prints from transparencies, and thus SOLOMON and ONGallery were misrepresenting the nature of the Helmut Newton prints.

24.     Plaintiff is informed and alleges that ONGallery, through Peter Neilson, Michael Carter, and Keith Allsopp continued working with SOLOMON; however, it soon became clear that SOLOMON was copying and reproducing Helmut Newton's photographs, despite The Helmut Newton Foundation informing them that SOLOMON held no copyrights in the Limited Edition Photography. Specific instances of SOLOMON admitting to reproducing prints, include but are not limited to:

- On November 15, 2015, SOLOMON emailed Peter Neilson and Lance Leman stating "this endeavor has been very time consumming [sic] for me in... overseeing the selection and restoration processing. I am returning to the lab to review the re-restored prints and the scans which will be sent to you today..."

- On January 17, 2016, SOLOMON wrote that he had "Two types of intventory [sic], one actual prints and one of scans of my poster prints." And because there was no inventory of what he and Dunnicliff possessed, SOLOMON "just took possession, stored everything, and over the following two years…restored what I could" and "then also sold a series of prints…There are obviously 'grey areas' but the entire art and photography world is a grey area."

25.     Plaintiff is informed and alleges that on April 20, 2016, SOLOMON wrote, he was trying to digitally enhance the Rue Abriot, despite emailing Peter Neilson, Michael Carter, and Keith Allsopp on December 15, 2017 that the "Last 16x20 Rue Arbiot to be shipped this week."

26.     Plaintiff is informed and alleges that SOLOMON's statement led to

Peter Neilson, Michael Carter, and Keith Allsopp inquiring as to the legality of SOLOMON's actions, and eventually actively participating and profiting from these unauthorized reproductions by misrepresenting the nature of the prints to ONGallery's customers.

27.     Plaintiff is informed and alleges that in response to SOLOMON's statement that he was digitally enhancing the Rue Arbiot, Keith Allsopp on April 21, 2016 wrote to Lance Leman, "I really think Norman is trying to print more HNs."

28.     Plaintiff is informed and alleges that Lance Leman wrote: "Yes. He and John Dunnicliffe [sic] think they are entitled to do so, but from the settlement agreement I've seen, I fail to understand how they come to that conclusion."

29.     Plaintiff is informed and alleges that Keith Allsopp then wrote: "My concern is that if they do and it gets publicly known, our HN collection will be worthless."

30.     Plaintiff is informed and alleges that Lance Leman wrote: "We have an exclusive contract, good for another 18 months, so lets hope he honours it. [sic]"

31.     Plaintiff is informed and alleges that Keith Allsopp in response said: "But we will not know if he's sending us original or reprints. Rarity is the key so we can't sell unlimited reprints."

32.     Plaintiff is informed and alleges that later that day, SOLOMON wrote Keith Allsopp and Lance Leman "the lab is working on the Rue Abriot high res scan to produce a 'test print' so, let me know if you want another on consignment as that was your most popular print and I'm hoping that some more revenue will be achieved via On Gallery??"

33.     Plaintiff is informed and alleges that in response to SOLOMON Keith Allsopp wrote: "Are you saying you are printing more Rue Aubriots? I doubt we could get away with that having already said numbers are limited."

34.     Plaintiff is informed and alleges that in sum, ONGallery sold 19 prints of the Rue Aubriot despite SOLOMON originally representing that he had six.

35.     Plaintiff is informed and alleges that regarding a photograph of David Bowie, on March 10, 2017, SOLOMON wrote to Keith Allsopp that he could produce the portrait as a crop or with David Bowie in front of jail bars because SOLOMON "had the original print cut/cropped to center it."

36.     Plaintiff is informed and alleges that in response, Keith Allsopp wrote: "The one we originally had from you had the bars in the background and we've only sold one. This is significantly larger picture and I think more saleable, but having told the world it is probably unique, I am reluctant to market another. Still, I've already had a coupe of enquiries for it, so maybe I can sell two or more without having to reveal there are more that one. I have to maintain market credibility so that I become the trusted and respected source of Newton's work, at least until I manage to see it all!"

37.     Plaintiff is informed and alleges that in response to an email from SOLOMON discussing "restoration," Keith Allsopp wrote "Norman, it sounds like you're printing them!"

38.     Plaintiff is informed and alleges that in response SOLOMON wrote, "In just a few cases, to properly restore a very difficult print (remember all only once I've of these are pre 1985), keep the continuity and adjust the central focus we reworked a print into a high res scan.  This would have to be done to properly restore the 'Mirror' print.'  I have 114 original transparencies produced by Helmut but only used them when I had a corresponding print that had to be completely reworked. Over a year ago. [sic] I mentioned this to Peter."

39.     Plaintiff is informed and alleges that in addition to selling unauthorized copies of Helmut Newton prints, SOLOMON, Michael Carter, Peter Neilson, and Keith Allsopp through ONGallery sold several unauthorized copies with counterfeit signatures. SOLOMON represented he acquired these prints from individuals in France and Germany as Helmut Newton "signed a range of prints for friends, acquaintances and business colleagues who paid him small amounts for each print."

40. Plaintiff is informed and alleges that on October 8, 2019, Keith Allsopp received an email from Mallet International, a major auction house in Japan, informing him that both NEWTON and Mallet International's photograph expert examined the signatures on three Helmut Newton prints offered for sale by ONGallery, and confirmed that the signatures were not authentic.

41. Despite two experts representing they were counterfeit prints, ONGallery continued to fraudulently misrepresent signed prints from SOLOMON as authentic originals.

## PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

42. Plaintiff is informed and alleges that SOLOMON, GLOBAL IMAGES, and LYONS GALLERY engaged in a similarly concerted scheme to sell counterfeit Helmut Newton Prints, including the following photographs Plaintiff purchased from GLOBAL IMAGES and LYONS GALLERY entitled "Elsa Peretti in Halston Bunny Costume II"; "Two Pairs of Legs in Black Stockings"; "Saddle I, Hermès, Vogue Hommes"; and, "Saddle II, Hermès, Vogue Homme, Hôtel Lancaster" (collectively the "Subject Photographs")

43. On or about March 23, 2022, Plaintiff met with Jay Lyon of LYONS GALLERY and subsequently purchased a silver gelatin print of "Elsa Peretti in Halston Bunny Costume II" that LYONS GALLERY and Jay Lyon represented was hand-signed by Helmut Newton and stamped by the Helmut Newton Estate.

44. On March 29, 2022, Jay Lyon sent Plaintiff the following URL to Plaintiff for her to view a private collection of photographs curated for Plaintiff: https://privateviews.artlogic.net/2/67c73f0a0cc13ee3cee128/.

45. The link is still accessible and displays several Helmut Newton prints that are advertised as authentic.

46. On March 30, 2022, Plaintiff purchased a silver gelatin copy of Two Pairs of Legs in Black Stockings from LYONS GALLERY, which was also hand signed, dated, and stamped by the Helmut Newton Estate.

- 10 -

47.     Looking to purchase more Helmut Newton prints, Plaintiff contacted Matthew Wiltsey of GLOBAL IMAGES, who also offered Helmut Newton prints but at a reduced price.

48.     Matthew Wiltsey informed Plaintiff that GLOBAL IMAGES had sold to LYONS GALLERY for several years, and that Matthew Wiltsey and Jay Lyon spoke frequently.

49.     Based on assurances of authenticity, Plaintiff purchased three Helmut Newton prints from GLOBAL IMAGES, a signed copy of "Saddle I, Hermès, Vogue Hommes", "Saddle II, Hermès, Vogue Homme, Hôtel Lancaster", and a signed copy of "Hollywood Cadillac, Los Angeles 1976".

50.     These prints were also accompanied by a Certificate of Authenticity from SOLOMON which provided that the prints were authenticated by SOLOMON's 1984 agreement with Helmut Newton and the 2012 Settlement Agreement with the Helmut Newton Estate.

51.     In or about September 2022, Plaintiff opened her own online photography gallery and applied to for a booth at MIA Photofair in Milan, Italy.

52.     When Plaintiff stated she intended to bring her Helmut Newton prints, the organizer of MIA Photofair, Sofia Boffardi, requested that Plaintiff send photographs of the Helmut Newton prints.

53.     After reviewing Plaintiff's prints, Sofia Boffardi informed Plaintiff that the prints were counterfeit and she could not bring them to MIA Photofair.

54.     Similarly, Susanna Weninger of Artnet inquired about Plaintiff's Helmut Newton prints, but after a review of the images, also informed Plaintiff of their inauthenticity.

55.     Plaintiff is informed and believes, and thereon alleges, that after SOLOMON entered into the settlement agreement, Defendants were displaying, advertising, offering for sale, and selling infringing copies of the Limited Edition Photography without permission and in violation of the settlement agreement and

- 11 -

1984 agreement concerning a limited distribution of "Private Property Portfolio" photography.

56.     Plaintiff is informed and believes and thereon alleges that following the legitimate publication and display of the Limited Edition Photography, Defendants offered unauthorized or illicit copies of the Limited Edition Photography ("Infringing Works").

57.     Plaintiff is informed and believes and thereon alleges that Defendants offered the Infringing Works for sale with false provenance in the form of stamp, signature, or stated narrative that the infringing copies were authentic and authorized, indicating to the public that the Infringing Works originated with The Helmut Newton Foundation.

58.     In offering the Infringing Works, Defendants falsely represented that the counterfeit Infringing Works were authorized, or otherwise were genuine originals, legally-authorized prints, "signed limited editions," or "Estate Certified prints."

59.     Plaintiff is informed and believe and thereon allege that LYONS GALLERY and GLOBAL IMAGES misrepresented that certain Infringing Works that SOLOMON, were originals or authorized prints to which SOLOMON had a right to sell, but that these works were actually unlawful copies that were created or copied as part of a collective fraudulent conspiracy with SOLOMON.

## FIRST CLAIM FOR RELIEF

(For Violations of 18 U.S.C. § 1961(c) - Against All Defendants)

60.     Plaintiffs realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

61.     Defendant SOLOMON conspired with Defendants GLOBAL IMAGES and LYONS GALLERY to willfully infringe The Helmut Newton Foundation's rights in the Limited Edition Photography and to willfully pass off and sell the counterfeit Infringing Works to galleries and individuals, such as Plaintiff,

- 12 -

worldwide. On information and belief, Plaintiff alleges that Defendant SOLOMON and Defendants GLOBAL IMAGES and LYONS GALLERY acted together to unlawfully source, modify, reproduce, adjust, and copy the Limited Edition Photography that The Helmut Newton Foundation has rights in and have illicit copies made of those works. Plaintiff alleges that Defendant SOLOMON and Defendants applied a stamp, signature, or false statement/narrative to the copies or in advertising the Infringing Works to give the copy the appearance of having originated from Plaintiff, and they offered the disputed works for sale with the goal of convincing buyers that the works Defendants had for sale were genuine.

62. Defendant SOLOMON conspired with Defendants GLOBAL IMAGES and LYONS GALLERY to willfully and fraudulently create, manufacture, advertise, exploit, and sell the counterfeit Infringing Works to Plaintiff, and others, while misrepresenting that the Infringing Works were legitimate or duly-authorized Limited Edition Photography.

63. The association of Defendants SOLOMON, GLOBAL IMAGES, and LYONS GALLERY constituted an enterprise within the meaning of 18 U.S.C. § 1961(c), which was engaged in, and whose activities affected, interstate and foreign commerce. This enterprise was continuous because the predicate act of copyright infringement was a regular way of conducting SOLOMON's ongoing online sales and of conducting or participating in the ongoing RICO enterprise. This enterprise poses a threat of continued willful copyright infringement, false endorsement, and fraud.

64. Defendant SOLOMON participated and conspired Defendants GLOBAL IMAGES and LYONS GALLERY to participate in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, all in violation of 18 U.S.C. § 1962(c).

65. Under 18 U.S.C. § 1961 *et seq.*, Defendants SOLOMON, GLOBAL IMAGES, and LYONS GALLERY are liable for all damages caused by the

conspiracy to copy and sell copies of the Infringing Works, treble damages, and Plaintiffs' attorneys' fees.

## SECOND CLAIM FOR RELIEF

(For Wire and Mail Fraud, Violations of 18 U.S.C. §§ 1341, 1343 - Against All Defendants)

66.     Plaintiffs realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

67.     Defendants and other members of the enterprise, having devised the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire or mail communication in interstate or foreign commerce writings or sounds for the purpose of executing such scheme or artifice (namely, to sell artwork with false signatures and/or provenance and/or designations of endorsement). Specifically, SOLOMON and GLOBAL IMAGES by use of interstate telephone wires, interstate mails, and/or interstate wires sold the fraudulent Infringing Works, in interstate and international commerce.

68.     Each participant knew, expected, reasonably foresaw, and intended that these transmissions by means of wire or mail communication in interstate or foreign commerce would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

69.     Defendants willfully and with intent to defraud sold counterfeit or forged artworks to, on information and belief, galleries and consumers including Plaintiff and also misrepresented and/or concealed the material facts from them, as discussed above.

70.     These consumers, like Plaintiff, relied upon Defendants' misrepresentations, and such reliance was reasonable, based on the appearance of signatures and/or stamps indicating provenance from Helmut Newton or his agents.

71.     Plaintiff and consumers were injured by Defendants' fraudulent

1  conduct, as discussed above.

2  **THIRD CLAIM FOR RELIEF**

3  (Intentional Misrepresentation –Against All Defendants)

4  72.     Plaintiffs reallege and incorporate by reference the preceding paragraphs

5  of this Complaint as if fully set forth herein.

6  73.     Defendants SOLOMON, GLOBAL IMAGES, and LYONS GALLERY

7  made the following representations to Plaintiff which they held out to be true:

8         a. SOLOMON possessed and was entitled to a collection of original,

9            silver gelatin, vintage Helmut Newton photographs, which he kept in

10           archival conditions;

11        b. All rights required for distributing these prints by sale had been

12           obtained by SOLOMON from The Helmut Newton Foundation,

13           memorialized in the 2012 Agreement with The Helmut Newton

14           Foundation, and Defendants SOLOMON, GLOBAL IMAGES, and

15           LYONS GALLERY were entitled to distribute these Helmut

16           Newton prints;

17        c. The Helmut Newton prints were authorized, or otherwise were

18           genuine originals, legally-authorized prints, "signed limited

19           editions," or "Estate Certified prints."

20  74.     Defendants knew that their representations were false at the time they

21  were made, and intended for Plaintiff to rely on these representations in purchasing

22  the Infringing Works;

23  75.     Plaintiff reasonably relied on Defendants' representations;

24  76.     As a result of Defendants' representations Plaintiff was harmed.

25  **FOURTH CLAIM FOR RELIEF**

26  (Negligent Misrepresentation –Against All Defendants)

27  77.     Plaintiffs realleges and incorporate by reference the preceding

28  paragraphs of this Complaint as if fully set forth herein.

78. Defendants made the following representations to Plaintiff which they held out to be true:

  a. SOLOMON possessed and was entitled to a collection of original, silver gelatin, vintage Helmut Newton photographs, which he kept in archival conditions;

  b. All rights required for distributing these prints by sale had been obtained by SOLOMON from The Helmut Newton Foundation, memorialized in the 2012 Agreement with The Helmut Newton Foundation, and Defendants SOLOMON, GLOBAL IMAGES, and LYONS GALLERY were entitled to distribute these Helmut Newton prints;

  c. The Helmut Newton prints were authorized, or otherwise were genuine originals, legally-authorized prints, "signed limited editions," or "Estate Certified prints."

79. Defendants had no reasonable grounds for believing the representations were true when made, and intended for Plaintiff to rely on these representations in purchasing the Infringing Works;

80. Plaintiff reasonably relied on Defendants' representations;

81. As a result of Defendants' representations, Plaintiff was harmed.

## FIFTH CLAIM FOR RELIEF

(Fraudulent Concealment –Against Defendants Lyons Gallery and Global Images)

82. Plaintiffs realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

83. Defendant LYONS GALLERY and GLOBAL IMAGES concealed certain material facts from Plaintiff, including that:

  a. SOLOMON possessed and was entitled to a collection of original, silver gelatin, vintage Helmut Newton photographs, which he kept in archival conditions;

b. All rights required for distributing these prints by sale had been obtained by SOLOMON from The Helmut Newton Foundation, memorialized in the 2012 Agreement with The Helmut Newton Foundation, and Defendants SOLOMON, GLOBAL IMAGES, and LYONS GALLERY were entitled to distribute these Helmut Newton prints;

c. The Helmut Newton prints were authorized, or otherwise were genuine originals, legally-authorized prints, "signed limited editions," or "Estate Certified prints."

84. LYONS GALLERY and GLOBAL IMAGES intended to deceive Plaintiff by concealing these facts;

85. As a result of LYONS GALLERY and GLOBAL IMAGES's concealment, Plaintiff was harmed.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

### **Against All Defendants**

#### With Respect to Each Claim for Relief

a. That Plaintiff be awarded all damages in connection with Defendants' violations of 18 U.S.C. §§ 1341, 1343, 1961(c), and 2318, as well as any other applicable statute subject of this complaint;

b. That Plaintiff be awarded treble and/or punitive damages in connection with Defendants' acts of infringement, illegal trafficking and counterfeiting, fraud, and misrepresentations discussed herein;

c. That Plaintiff be awarded compensatory, general, and punitive damages according to proof;

d. That Plaintiff be awarded pre-judgment interest as allowed by law;

e. That Plaintiff be awarded the costs of this action; and

f. That Plaintiff be awarded such further legal and equitable relief as the

Court deems proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Dated: February 24, 2023          By:     */s/ Scott Alan Burroughs*
                                          Scott Alan Burroughs, Esq.
                                          Trevor W. Barrett, Esq.
                                          Kelsey M. Schultz, Esq.
                                          DONIGER / BURROUGHS
                                          Attorneys for Plaintiff

COMPLAINT